170 P.2d 614

**In re SULLIVAN.**

No. 4831.

Supreme Court of Arizona.

July 1, 1946.

Rouland W. Hill, of Phoenix, for State Bar.

Floyd M. Stahl and P. H. Hayes, both of Phoenix, for respondent.

PER CURIAM.

The respondent is a member of the Bar of this state. Pursuant to Article 3, Chapter 32, A.C.A:1939, the local administrative committee, having received complaints concerning his conduct, held a hearing thereon. Respondent was present and participated in person and by counsel, and evidence was duly introduced. Thereafter the administrative committee made findings and recommendations and transmitted them, along with a transcript of the evidence, to the board of governors. The board of governors, after notice to respondent, was duly convened, and respondent, who was again present with counsel, was permitted to make an extended statement in support of his position. The board reviewed the report and transcript of the administrative committee, and, as authorized by Section 32-335, A.C.A.1939, acted thereon by reporting the matter to this court for such disciplinary action as we should deem just. Thereupon respondent was cited to appear and show cause why we should not enter an order disbarring, suspending or reproving him. Upon the hearing pursuant thereto, he requested, and was granted, permission to introduce additional testimony, and the matter was submitted on such testimony and the record below.

The respondent contends that none of the charges against him come within the prohibitions of Sections 32-201, A.C.A. 1939. If that were true, proceedings under Article 2, Chapter 32, could not be sus-

tained. In re Bailey, 30 Ariz. 407, 248 P. 29. But these proceedings were instituted under Article 3 of that chapter, which unlike the older Article 2, does not restrict by specification the authority of this court, under its inherent powers, to pass upon the fitness of its officers and to discipline them for professional misconduct. In re Bailey, supra.

It is also argued that respondent is not subject to the jurisdiction and disciplinary action of this court because he is now in the status of a retired member of the Arizona State Bar. But the disciplinary procedure embraces all members of the Bar. Sections 32-335 and 32-337, A.C.A. 1939. Retired members are members of the Bar within the meaning of the State Bar Act. Section 32-304, A.C.A. 1939. They may become active members merely by application and the payment of the required registration fees. Sections 32-308, A.C.A. 1939. We therefore hold that the disciplinary jurisdiction of this court extends to retired, as well as to active, members of the Bar of this state.

It is charged, amongst other things, that the respondent, acting both as attorney and petitioner, in his petition to the Superior Court of Maricopa County, in cause No. 12529, for letters of guardianship in the Estate of Betsy Joyce Sullivan, a minor, represented to the court that the estate of said minor was of the approximate value of $15,000, whereas the actual value of said estate, as the respondent well knew, was substantially in excess of that amount; that by reason of said misrepresentations the court fixed the guardian's bond at $15,-000, whereas, if the truth had been made to appear, the court would have required a bond greatly in excess of said sum.

This charge is fully substantiated by the record. The minor's estate consisted of her as yet undistributed share of the estate of Aileen G. Sullivan, deceased, being cause No. 12174 in the same court. The respondent's petition for letters of guardianship was filed September 28, 1937, and it estimates the estate at $15,000. Yet only ten days later the respondent, as administrator of said estate of Aileen G. Sullivan, deceased, filed a verified Amended Petition for Order of Sale of Real Estate, listing assets totaling $46,567.97, of which $42,-037.97 was personal property, and approximately two-thirds would eventually be distributed to the minor. The original Inventory and Appraisement in the Aileen G. Sullivan Estate amounted to $41,865.83, and the Decree of Distribution, which was entered May 23, 1938, distributed an estate of $42,710.13, of which $28,473.42 was distributed to the minor. There can be no reasonable doubt that the respondent, when he filed and presented his petition for letters of guardianship well knew that the approximate value of the minor's estate was being grossly misrepresented.

Some point is made of the fact that the respondent filed his petition for letters of guardianship as petitioner only, and not

as an attorney. But it appears from the minute entry that at the hearing on the petition he appeared as attorney, as well as being sworn and examined as the petitioner. In any event, we do not wish to be considered as holding that a member of the Bar may with impunity misrepresent to the court so long as he does so in his private capacity.

Nor do we discern much merit in respondent's argument "that the court, in fixing the amount of such bonds, does not rely on such statements in petitions. * * *" On the contrary, unless the court's attention is directed at the hearing to the inaccuracy of the petition (and there is no claim that that was done in this case) it is well known that the court is compelled, as a practical matter, to rely very largely upon the statements in the petition and the supporting testimony at the hearing thereof, especially when such representations are made by one of its own attorneys. The court should not be obligated to deal with its own officers at arm's length.

It is further charged that respondent hypothecated property belonging to the estate of the minor for his own use. In this connection, we need only quote respondent's testimony before the local administrative committee:

"Mr. Salmon: You never did pledge or hypothecate any bonds of the estate? A. There were bonds and property pledged at one time, and we took those up with this $7,000, and that is where the $7,000 comes in.

"Q. You mean you pledged certain bonds belonging to the estate? A. That is right.

"Q. Home Owners Loan bonds? A. That is right.

"Q. To whom was that pledge made? A. With the bank.

"Q. With the bank in Los Angeles? A. Yes.

"Mr. Williams: Under authority of the court? A. No, I had all that authority on the bonds. I had all those bonds in the safety deposit box.

"Q. You didn't petition the court for authority to hypothecate them. A. No, I never did

"Mr. Salmon: Were they released from the pledge by the bank? A. Yes.

"Q. What bank were they pledged to, do you remember? A. Security First National.

"Q. Was the loan obligation paid? A. Yes, it was paid.

"Q. The bonds were released to you? A. That is right, that was done on several occasions.

"The Chairman: Where did the money come from to pay off the bonds? This may not be a pertinent question, or it may be. When you borrowed the money and hypothecated the bonds, you used the money

for various purposes I presume, inasmuch as you did it on several occasions, some personal, some Betsy Joyce, some family, and some business, is that right? A. That is right."

The remaining charges which are established by the evidence show, when considered separately, conduct less gross than the foregoing. But in the aggregate they reveal, at the least, a total ignorance or complete disregard of the most elemental duties and responsibilities of a fiduciary and an attorney-at-law. It is charged, and proved, that as attorney and administrator in the estate of his wife, Aileen G. Sullivan, deceased, the respondent failed to make any segregation of the community and separate property; that in the distribution of said estate, which consisted of real, as well as personal property, two-thirds of the whole estate was distributed to the minor child of the deceased and respondent, and one-third to the respondent outright, contrary to the laws of descent and distribution; that as guardian and attorney in the estate of Betsy Joyce Sullivan, a minor, he failed, for almost eleven months after the property of said estate had come into his possession and control, to file an inventory and appraisement; that at one stage of the proceedings in the same estate he failed for over twenty-seven months to file an account and report and then did so only after having been ordered by the court; that, although he was the father of said minor, he expended large sums from her estate for her maintenance and education without first obtaining an order of the court; that through his laxness (to put the most favorable construction upon the evidence) approximately $7,000 in Home Owners Loan Corporation Bonds, belonging to the minor's estate, have disappeared. It is worthy of note that the guardian's bond, fixed at an insufficient sum by reason of respondent's misrepresentations, was barely sufficient to cover the aforesaid bonds and unauthorized expenditures.

No one of these last mentioned items, considered separately, would be sufficient, perhaps, to warrant disciplinary action in itself. For in determining the standard of professional conduct to be required of an attorney-at-law allowance must be made, in all fairness, for human error. But their cumulative effect, when considered together with respondent's misrepresentations to the court, and his pledging of estate property for private purposes, compels the conclusion that he has conducted himself, in these matters, with bland disregard of his duties and obligations as an officer of the court. Our responsibility to the public and to the profession forbids that it should pass unnoticed. It is, therefore, ordered that respondent, Henry J. Sullivan, be, and he is hereby, suspended from the right to practice law in Arizona for the period of two years from the date of rendition of this judgment, with leave at the end of such period to apply for reinstatement, which will be granted upon a proper show-

342

ing that his future conduct will be in accordance with the canons of ethics.

STANFORD, C. J., LA PRADE, J., and JOHN D. LYONS, Jr., Superior Judge, concur.

MORGAN, J., being disqualified, the Honorable John D. Lyons, Jr., Judge of the Superior Court of Pima County, was called to sit in his stead.